Filed 8/11/25  Madrigal v. CVT, LLC CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JAMES MADRIGAL et al.,<br><br>    Plaintiffs and Respondents,<br><br>    v.<br><br>CVT, LLC et al.,<br><br>    Defendants, Cross-complainant, Cross-defendant and Appellants;<br><br>MICHAEL PAIM,<br><br>    Cross-defendant, Cross-complainant and Respondent. | F087500, F087770, F087771<br><br>(Super. Ct. No. VCU289798)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Tulare County.  John P. Bianco, Judge.

Whitney, Thompson & Jeffcoach, Timothy L. Thompson and Jacob S. Sarabian for Defendants, Cross-complainant, Cross-defendant and Appellants.

Webb Law Group, Lenden F. Webb and Chandler Gietzen for Plaintiffs and Respondents.

Law Offices of Michael J. Lampe and Michael P. Smith for Cross-defendant, Cross-complainant and Respondent.

-ooOoo-

Plaintiffs James Madrigal, Gonzalo Silva, and Jack Cortez (collectively Plaintiffs) brought wage and hour claims against their former employers, defendants CVT, LLC and Lisa Colburn (collectively CVT). CVT filed a cross-complaint for equitable indemnity against their management employee, Michael Paim, who countersued CVT. Ultimately, Madrigal voluntarily dismissed his claims; Silva accepted an offer to compromise for $28,000; Cortez obtained a jury verdict against CVT which resulted in a judgment of $25,282; CVT obtained a partial jury verdict for $521 against Paim in relation to Cortez's claims; and Paim's claims against CVT were dismissed by the court.

After liability and damages were determined, (1) CVT first filed a motion for costs and later moved for an award of attorney fees against Madrigal, who had voluntarily dismissed his claims before trial. The trial court granted Madrigal's motion to tax CVT's memorandum of costs and denied CVT's motion for attorney fees, concluding that Madrigal did not bring his claims in bad faith. (2) CVT also filed a motion for costs against Paim, which the trial court denied, concluding the motion was untimely and CVT was not a prevailing party as to Paim. (3) As prevailing parties, Cortez and Silva filed a motion for attorney fees and costs, which the trial court granted, apportioning 97.8 percent of the fees and costs to CVT and 2.2 percent to Paim. CVT contends each of those rulings was erroneous.

We ordered supplemental briefing on whether the trial court was authorized to award fees and costs in favor of Cortez and Silva as to Paim, whom neither Cortez nor Silva sued or obtained a judgment against. Cortez, Silva, and Paim argue that the award was not authorized; CVT argues that it was authorized.

We reverse (1) the trial court's order that CVT's memorandum of costs was untimely relative to the dismissal of Paim's cross claims against CVT and (2) the trial court's award of fees and costs in favor of Cortez and Silva as to Paim. In all other respects, we affirm.

2.

**FACTUAL AND PROCEDURAL BACKGROUND**

In December 2021, Webb Law Group, APC (Webb Law Group) filed suit on behalf of Madrigal and Cortez, both truck drivers for CVT, against CVT, alleging "(i) failure to pay all wages owed; (ii) failure to provide meal periods and rest breaks; (iii) failure to pay all overtime hours worked; (iv) failure to timely pay wages; (v) failure to provide accurate itemized wage statements; (vi) unfair competition; and (vii) willful misclassification." In March 2022, plaintiffs filed an amended complaint, adding Silva as a plaintiff. In May 2022, CVT filed an answer.

*Madrigal*

On July 7, 2023, Webb Law Group filed a voluntarily dismissal of Madrigal's claims.

On July 25, 2023, CVT filed a memorandum of costs. On August 2, 2023, Madrigal filed a motion to strike or tax costs. On October 2, 2023, the date scheduled for a hearing on the motion to tax or strike costs, the trial court issued a tentative ruling, indicating it intended to grant the motion to strike or tax costs. The court then delayed a ruling on the motion to permit CVT to subpoena Madrigal. Madrigal was served with a subpoena and required to attend the November 6, 2023 hearing, but he failed to appear. The court issued a bench warrant and again delayed a ruling on the motion to strike or tax costs.

In advance of the December 7, 2023, hearing on the motion to strike or tax costs, Madrigal was served with a subpoena and the bench warrant, both requiring his attendance at the hearing, yet he again failed to appear. At that hearing, Madrigal's counsel, Lenden Webb stated (for the first time in the record before this court) his firm no

longer represented Madrigal.[1]  On CVT's request, the trial court again delayed ruling on the motion to tax or strike costs.

On January 2, 2024, CVT filed a motion for attorney fees as to Madrigal for his filing of a frivolous claim.  On or around January 23, 2024, Webb Law Group attorneys Lenden Webb and Brook Nevels filed an opposition to the motion for attorney fees, but listed themselves above the caption as attorneys for Cortez and Silva only, while submitting arguments specifically on behalf of Madrigal, Cortez and Silva in the introduction to the argument on the same page.  On January 29, 2024, CVT filed a reply, among other things, objecting to Webb Law Group's continued briefing on behalf of Madrigal in light of attorney Lenden Webb's December 7, 2024 statement that Webb Law Group no longer represented Madrigal.

At a February 5, 2024, hearing, the trial court adopted a previously posted tentative ruling as the order of the court on the motion to tax costs by Madrigal and defendant's motion for attorney fees.  The court held that Madrigal did not file the action "without foundation" or in bad faith.  For that reason, it denied CVT's motion for attorney fees and granted Madrigal's motion to tax CVT's costs.  In its written order, the trial court also stated "[u]nder defendant's theory …, [Madrigal was unrepresented, so the court was] inclined to deny the motion [for attorney fees] for lack of [personal] service to Madrigal."

---

[1]  It is unclear at what point Webb Law Group began to contend that it no longer represented Madrigal.  At the December 7, 2023 hearing, the trial court referenced "declarations that … Madrigal had relieved … Webb [Law Group]."  Such a declaration is not in the record before us, but the trial court referred to a declaration by CVT's general manager, Dave Jameson, where Jameson declared Madrigal said he never authorized filing suit and never filed a retainer agreement with Webb Law Group.  In any event, the record before us is devoid of any notice of substitution of attorney or motion to be relieved as counsel.

4.

*Silva*

On July 27, 2023, Silva accepted CVT's Code of Civil Procedure "section 998 offer in the amount of $28,000," plus reasonable attorney fees and costs.

*Cortez*

On August 23, 2023, a jury returned a verdict in favor of Cortez in the amount of $18,367.50 as follows:  "$3,142.50 for nonpayment of minimum wage under Labor Code[2] section 1194; [¶] $1,500 for nonpayment of overtime compensation under … section 1194; [¶] $4,275 for waiting time penalties for nonpayment of wages under … section 203; [¶] $7,500 for meal break violations under … sections 227.6 and 512; and [¶] $1,950 for inaccurate wage statement violations under … section 226.  On November 2, 2023, the trial court entered judgment in favor of Cortez for the total amount of $25,282, inclusive of stipulated interest and liquidated damages.

*Paim*

The jury found Paim 36.75% responsible for the nonpayment of Cortez's overtime (i.e., $551.25 in damages) and not responsible for any of the other violations.

On February 5, 2024, the trial court considered Paim's motion to tax CVT's memorandum of costs.  The court noted that neither Paim nor CVT had "addressed in their moving papers who the prevailing party [was]."  CVT argued it was the prevailing party because it sued for equitable indemnity and the jury found that Paim was partially responsible for one of the Labor Code violations.  The court noted that the jury found Paim was "not responsible for non-payment of minimum wage, waiting time penalties for non-payment of wages, missed rest breaks, missed meal breaks, and inaccurate wage statements."  The trial court then afforded the parties an opportunity to brief the issue of whether CVT was a prevailing party as to Paim.

---

**2**     All further undesignated statutory references are to the Labor Code.

On February 26, 2024, the trial court denied CVT's request for costs, concluding CVT's motion was untimely and CVT was not a prevailing party as to Paim because it did not obtain a "net monetary recovery against Paim."

## DISCUSSION

I.      CVT'S FEES AND COSTS AS TO MADRIGAL

CVT argues the trial court committed several errors in reaching its conclusions that CVT could not recover attorney fees or its costs from Madrigal.  CVT contends: first, the trial court erred in considering only whether Madrigal *brought* the action in bad faith, rather than whether he brought or maintained the action in bad faith; second, Madrigal brought and maintained the action in bad faith because no claims were viable at the outset and Madrigal never participated in discovery; and third, even if Madrigal did not bring the action in bad faith such that CVT could not recover costs under section 218.5, CVT could nevertheless recover costs pursuant to Code of Civil Procedure section 1032, subdivision (b).  Madrigal disagrees on all three accounts, as do we.

Also, CVT argues that Webb Law Group—who they contend does not represent Madrigal—should be precluded from filing a brief on Madrigal's behalf.  For that reason, CVT has filed a motion to strike the respondent's brief Webb Law Group filed on behalf of Madrigal.  Because this is a threshold issue, we address it first.

*A. Webb Law Group's Filing on Behalf of Madrigal*

Webb Law Group has advanced the theory that it may be allowed to represent Madrigal as he "is a former client … of Webb" Law Group and it may therefore "still protect his interests under Rule 1.9 of the California Rules of Professional Conduct."  CVT disagrees.  We need not resolve that question because, as a matter of law, Webb Law Group is attorney of record for Madrigal on this appeal.  Webb Law Group never formally withdrew as counsel in the trial court, the firm continued to appear on Madrigal's behalf in the trial court, Webb Law Group was recognized by the trial court as Madrigal's attorney and was listed on all proofs of service by defense counsel as

6.

Madrigal's attorney of record. And, in any event, the brief in question does not affect the outcome of this case.

### 1. *Additional Background*

According to CVT, it noticed Madrigal's deposition for June 2023. Madrigal failed to appear and, on June 28, 2023, CVT obtained an order requiring Madrigal to sit for a deposition. On the same date, CVT contends, Webb Law Group contacted CVT and acknowledged a "breakdown" in the attorney-client relationship such that it could not guarantee Madrigal's presence at a deposition. CVT noticed Madrigal's deposition for July 12, 2023. On July 7, 2023, Webb Law Group filed a dismissal of Madrigal's claims. On October 2, 2023, Lenden Webb told the court he did so at Madrigal's direction. On December 7, 2023, in response to the court's prompting, Lenden Webb acknowledged Webb Law Group did not represent Madrigal. On February 5, 2024, Webb Law Group attorney Brooke Nevels acknowledged Webb had not filed a notice of substitution of attorney[3] and faulted CVT's counsel for failing to "simply reach[] out and sa[y] … are you still representing … Madrigal[?]"

On March 18, 2024, CVT filed the notice of appeal related to this portion of the appeal, identifying Webb Law Group as counsel for Madrigal. Webb Law Group filed no notice of substitution of attorney or motion to withdraw as counsel in response. Instead, on April 11, 2024, Webb Law Group filed a mediation suitability screening questionnaire with this court in which it identified "Lenden F. Webb" as counsel for Madrigal, which was accepted by the clerk's office. Four days later, on April 15, 2024, Webb Law Group filed a "notice of change of handling attorney within firm" (capitalization omitted) where Webb Law Group identified itself as "[a]ttorneys for … James Madrigal" and indicated "the handling attorneys for this matter at Webb Law Group" "will be … Lenden F. Webb." Since that time, Webb Law Group has not filed a substitution of attorney and has

---

[3] The record before us does not reflect that Webb Law Group ever filed a notice of substitution of attorney or a motion to withdraw as counsel.

7.

not moved this court to be relieved as counsel. Nevertheless, Webb Law Group claimed in its September 26, 2024 motion to intervene that it "no longer represents Madrigal" such that "filing a Respondent's Brief in this Appeal on [his] behalf would be improper." At oral argument, Chandler Geitzen, an attorney with Webb Law Group, acknowledged that Madrigal had been "basically off the radar with our office," which we interpret to mean that Webb Law Group had no contact with Madrigal. Despite those statements, in the respondent's brief Webb Law Group filed on Madrigal's behalf on December 5, 2024, it claims "because … Madrigal is a former client … of Webb Law Group …, his former counsel, may still protect his interests under Rule 1.9 of the California Rules of Professional Conduct.

> 2. *Analysis*

Code of Civil Procedure section 284 provides that "[t]he attorney in an action … may be changed at any time before or after judgment or final determination, as follows: [¶] 1. Upon the consent of both client and attorney, filed with the clerk, or entered upon the minutes; [or] [¶] 2. Upon the order of the court, upon the application of either client or attorney, after notice from one to the other." "When an attorney is changed, as provided in … [Code of Civil Procedure] section [285], written notice of the change and of the substitution of a new attorney, or of the appearance of the party in person, must be given to the adverse party. Until then [the adverse party] must recognize the former attorney." (Code Civ. Proc., § 285.) In this appeal, Webb Law Group filed documents on behalf of Madrigal at least twice, holding itself out as counsel for Madrigal. Since that time, Webb Law Group has not filed a notice of substitution of attorney or moved to be relieved as counsel for Madrigal. Accordingly, Webb Law Group is attorney of record for Madrigal. For that reason, we do not strike the respondent's brief Webb Law Group filed on behalf of Madrigal.[4]

---

[4] Even assuming Webb Law Group is not authorized to file a brief on behalf of Madrigal, the brief has no impact on the outcome of this case, as discussed below.

### B. *Standard for Bad Faith in the Section 218.5 Context*

CVT contends that the bad faith provision of section 218.5, subdivision (a) permits employers to recover fees and costs in matters *brought* in bad faith—as explicitly set out in the statute—and in matters where the plaintiff *continues to litigate* after it becomes clear the litigation was objectively without foundation. For the latter proposition, CVT relies on *Williams v. Chino Valley Independent Fire Dist.* (2015) 61 Cal.4th 97, 115 (*Williams*). But *Williams* does not address section 218.5. (*Williams, supra,* at p. 99.) At issue in *Williams* was Government Code section 12965, subdivision (b)—the fee provision for the Fair Employment and Housing Act (FEHA; Gov Code, § 12900). (*Williams, supra,* at p. 99.) At the time *Williams* was decided, Government Code section 12965 granted courts discretion to award fees and costs to prevailing parties. (Gov. Code, § 12965, former subd. (b); Stats. 2012, ch. 46, § 45.) Our Supreme Court explained that the FEHA fees provision was modeled after and enacted soon after the fee provisions of title VII of the Civil Rights Act of 1964 (Title VII), which was bounded by *Christiansburg Garment Co. v. EEOC* (1978) 434 U.S. 412. (*Williams*, *supra,* at pp. 111–112.) *Christiansburg* held "a Title VII plaintiff 'should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so.' " (*Williams*, at pp. 101, 111–112.) Our Supreme Court therefore concluded that the fees provision of Government Code section 12965—enacted roughly eight months after *Christiansburg*—was intended to incorporate the Title VII fee provisions as construed in *Christiansburg*.

No published authority has extended the *Christiansburg* standard to the section 218.5 context. Indeed, the modern version of section 218.5's fee provision was not enacted until 2013. (§ 218.5, as amended by Stats. 2013, ch. 142, § 1.) There is nothing to suggest that it was enacted in anticipation of *Christiansburg* applying, especially because its language—"attorney's fees and costs shall be awarded pursuant to this section

only if the court finds that the employee brought the court action in bad faith" (§ 218.5, subd. (a))—is different to and narrower than the *Christiansburg* standard. The Legislature is very capable of amending fees provisions to explicitly incorporate the *Christiansburg* standard. (See *Regency Outdoor Advertising, Inc. v. City of Los Angeles* (2006) 39 Cal.4th 507, 529–530.) In 2018, the Legislature amended the FEHA fees provision to explicitly condition an award of attorney's fees and costs to prevailing defendants on a finding that "the action was frivolous, unreasonable, or groundless when brought, *or the plaintiff continued to litigate after it clearly became so*." (Stats. 2018, ch. 955, § 5, subd. (b), italics added.) Had it intended the same for section 218.5, it would have made a similar amendment. It did not.

In short, as the text of section 218.5 subdivision (a) states, in order for an employer to recover fees and/or costs pursuant to section 218.5, it must prove the "employee brought the action in bad faith"; proving the employee maintained or continued to litigate the action after it became clear he or she would not prevail is irrelevant under section 218.5.

### C. The Trial Court Did Not Err in Finding Madrigal Did Not Bring the Action in Bad Faith

CVT argues that Madrigal's complaint was objectively without basis when filed and the trial court's ruling to the contrary was error.[5] CVT contends the trial court erred by discounting the evidence that defendant admitted to CVT's general manager Dave Jameson that he never authorized filing of the complaint, and the allegations were "all lies to begin with" and "something they needed to stick [Madrigal] in for false allegations."

---

[5] CVT also argues that Madrigal's failure to participate in discovery was evidence of bad faith in maintaining the action. We do not consider this argument because, as we concluded above, the fee provision of section 218.5 involves only whether the action was *brought* in bad faith.

10.

### 1. *Additional Background*

Jameson filed a declaration in support of CVT's motion for fees in which he declared:

> "Madrigal met with [Jameson] in or around early 2022 and asked for a job. [Jameson] told … Madrigal it would be difficult to provide him with a job given that he had a pending lawsuit against CVT. … Madrigal replied by saying he did not know what [Jameson] meant. [Jameson] then showed … Madrigal the complaint which was filed on his behalf against CVT. In response, … Madrigal said he[ was] not suing anybody and that he had never seen the complaint.

> "Madrigal then once again met with [Jameson] at the end of July, 2023. … Madrigal was still looking for a job and came to CVT's office with the specific intent of speaking with [Jameson]. When [Madrigal] was at CVT's office[,] [Jameson] asked why … Madrigal had dropped his lawsuit against CVT. … Madrigal said he had thought that was over with a long time ago (the dismissal had just recently been filed. [Jameson] then again asked … Madrigal why he filed suit in the first instance given that CVT had committed no Labor Code violations in the employment of him. … Madrigal said that he did[ not] know he had sued CVT for wage and hour claims, but rather thought he was filing legal paperwork to get money from the Covid-19 pandemic. Mr. Madrigal said he never met with any attorneys to sue CVT and that he never signed a retainer agreement."

Jameson submitted a supplemental declaration that included as an exhibit screenshots of text messages purportedly between Jameson and Madrigal on November 5, 2023.[6] Those messages read, in relevant part:

> "[Jameson:] … Court tomorrow?

> "[Madrigal:] no

> "[Jameson:] Why not?

> "[Madrigal:] never heard of it [¶] … [¶]

---

[6]    Jameson was not permitted to testify below. However, his declaration provided information necessary to authenticate the messages had he been permitted to testify. We assume, as did the trial court, the truth of the declaration and that the messages are what they are purported to be.

"[Jameson:]  I thought you got served with papers

"[Madrigal:]  not at all

"[Jameson:]  It's because you were never suing CVT and those lawyers said that you were

"[Madrigal:]  that's what I said

"[Jameson:]  They are saying that you were

"[Madrigal:]  that's something i'm not going to even deal with brotha at all

"[Jameson:]  What's happening is they are charging Lisa for legal services.  Saying they put a bunch of work in on your behalf.  You know they didn't.  I know they didn't.  But the are gonna go to court tomorrow and lie.

"[Madrigal:]  been too long for no service being done [¶] to me it's all lies to begin with.

"[Jameson:]  Exactly but Lisa is gonna get screwed over because they are lying.

"[Madrigal:]  i know what exactly it's for

"[Jameson:]  For what?

"[Madrigal:]  something they needed to stick me in for false allegations

"[Jameson:]  But why not come say that [¶] She doesn't deserve to have to pay money for that [¶] They say you got served.  I don't want you getting in trouble over their lies.  That would piss me off

"[Madrigal:]  Tell them think back hard"

After initially expressing concern that Jameson's declaration and the text messages were inadmissible hearsay, the trial court considered those documents.

Against the evidence outlined above, the trial court also considered evidence submitted by Webb Law Group which included, among other things:  a redacted client retainer agreement between Webb Law Group and Madrigal; Madrigal's written

12.

authorization for Webb Law Group to file suit;[7] a document entitled "Notice of Separation Report" reflecting Madrigal's final day of employment was September 13, 2021, which was produced by CVT in discovery; and a printed e-mail that appears to be from CVT's corporate counsel, providing language—inter alia, "we attempted to simply have you sign an acknowledgement that we provided you your last paycheck, however you would not sign anything and left before we could provide you with your final check"—for a letter to accompany a final paycheck to a former employee, and bearing handwritten notations that on "9/13/2021 James Madrigal [r]efused to [s]ign [a] [s]eparation [r]eport" and that CVT "[m]ailed out [on] 9/24/2021 [a] [c]ertified letter [and] paycheck [to] Madrigal," also produced in discovery by CVT.

The trial court found, "even accepting Jameson's declaration as true, … bad faith has [not] been proven ….  Madrigal may have told Jameson what he thought was necessary to be rehired.  Madrigal may have stated the things in Jameson's declaration to Jameson without those statements being factually true."  "Madrigal could have decided to drop the lawsuit, not because of his bad faith, but for a number of other reasons, such as rehire with [CVT], rehire in the industry or a lack of desire to proceed with the case, including depositions and testimony at trial."  For those reasons, the trial court found insufficient evidence of bad faith to conclude the lawsuit was "objectively without foundation" and granted Madrigal's motion to tax costs.

### 2.  Legal Framework and Standard of Review

Section 218.5 provides, in relevant part:  "In any action brought for the nonpayment of wages, fringe benefits, or health and welfare or pension fund contributions, the court shall award reasonable attorney's fees and costs to the prevailing

---

**7**    The authorization to file suit is not in the record before us and appears to have proffered for in camera review.  Based on the trial court's analysis and Webb's offer to submit the unredacted versions for in camera review, it appears that the trial court reviewed the unredacted version of the retainer agreement and Madrigal's written authorization to proceed with the suit.

13.

party if any party to the action requests attorney's fees and costs upon the initiation of the action. However, if the prevailing party in the court action is not an employee, attorney's fees and costs shall be awarded pursuant to this section only if the court finds that the employee brought the court action in bad faith." (§ 218.5, subd. (a).) Thus, in an action for the nonpayment of wages, a prevailing party employer is prohibited "from recovering attorney fees unless the trial court finds the employee brought the wage claim in bad faith." (*Dane Elec Corp., USA v. Bodokh* (2019) 35 Cal.App.5th 761, 764.) In the section 218.5 context, courts have held that a claim is not brought in bad faith if there is "some legitimacy" to the claim (*Ramos v. Garcia* (2016) 248 Cal.App.4th 778, 792) or if the claim is nonfrivolous (*Arave v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (2018) 19 Cal.App.5th 525, 548). In the FEHA context,[8] "bad faith" includes, among other things, bringing a lawsuit when it was "objectively without foundation when brought" (*Williams*, *supra*, 61 Cal.4th at pp. 111, 115), which includes when "there was absolutely no evidence to support" the plaintiff's claims (*Leek v. Cooper* (2011) 194 Cal.App.4th 399, 421; *Villanueva v. City of Colton* (2008) 160 Cal.App.4th 1188, 1200.)

"The abuse of discretion standard of review applies to a ruling on a motion for attorney fees [citation] as well as a motion to tax costs [citation]. Under this standard of review, appellate courts will disturb a trial court's ruling only if ' " 'a clear case of abuse is shown.' " ' [Citation.] The question on appeal is whether the challenged ruling ' "transgresses the confines of the applicable principles of law[.]" ' [Citation.] A trial court's decision ' " ' "will not be overturned in the absence of a manifest abuse of

---

[8] As discussed above, section 218.5's fees provision bad faith requirement is narrower than the FEHA fees provision because it does not include continuing to litigate after it became clear that the action was frivolous, unreasonable, or groundless. Nevertheless, the legislative history of section 218.5's fees provision described the provision as being "similar" to the FEHA provision. (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 462 (2013-2014 Reg. Sess.) July 2, 2013, pp. 1, 4.) The FEHA fees provision language regarding bringing an action that was frivolous, unreasonable, or groundless is therefore instructive.

discretion, a prejudicial error of law, or necessary findings not supported by substantial evidence." ' " ' " (*Valenti v. City of San Diego* (2023) 94 Cal.App.5th 218, 231.)

CVT contends that we should conduct a de novo review. However, that standard of review in this context would only apply to review of the "trial court's interpretation of the statute" (*G.F. Galaxy Corp. v. Johnson* (2024) 100 Cal.App.5th 542, 551) or if the issue was "a pure question of law and does not involve the resolution of disputed facts." (*Stratton v. Beck* (2017) 9 Cal.App.5th 483, 492.) We addressed the interpretation of section 218.5 above without deference to the trial court's ruling and concluded that the court appropriately interpreted section 218.5. The remaining issue for review—whether the trial court erred in concluding based on the evidence before it that Madrigal filed the action in bad faith—relies on interpretation of the evidence presented below and is not a pure issue of law. The abuse of discretion standard applies.

### 3. Analysis

CVT argues that the trial court erred in relying exclusively on Webb Law Group's "argument that there was a reasonable basis for claiming he received his final paycheck late, entitling him to waiting time penalties" which did "not specify when … Madrigal's employment ended, when CVT made his check available to him, or why … Madrigal allegedly did not receive his check when it was allegedly due." CVT further argues the court erred in concluding that the action was not filed in bad faith because Madrigal failed to show "that CVT's alleged failure to timely pay wages was 'willful' " for purposes of section 203 because he did not show "there was no 'good faith dispute' as to whether 'wages [were] owing' " and therefore did not "make a prima facie case for relief" (Italics omitted.) We disagree in both respects.

"[S]ection 202 specifies the default deadline for paying employees who … resign: immediately at the time of quitting, if the employee has given sufficient advance notice, and within 72 hours if the employee has not. [Citation.] To enforce these deadlines, … section 203 prescribes a sanction for employers who 'willfully fail[ ] to pay' the full

15.

amounts due: absent timely payment of 'any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.' " (*Naranjo v. Spectrum Security Services Inc.* (2022) 13 Cal.5th 93, 105–106.)

The documents before the trial court, produced by CVT in discovery, reflected that Madrigal last worked for CVT on September 7, 2021, and "voluntarily quit effective" September 13, 2021. It is not clear from the record when Madrigal gave notice that he would voluntarily quit. However, based on the handwritten notes on the documents provided by CVT, Madrigal "refused to sign [a] [s]eparation [r]eport" on September 13, 2021. Based on the e-mail from counsel, it appears that CVT had a check prepared for Madrigal on that date but did not provide it to him because he "would not sign anything and left before [CVT] could provide [Madrigal] with [his] final check." CVT then failed to mail Madrigal the check until September 24, 2021—more than 72 hours after Madrigal had resigned. CVT's contention that Madrigal failed to make a prima facie case that the failure to pay wages was willful misses the mark. Based on the e-mail from CVT's counsel produced in discovery, CVT appears to have had a check prepared for Madrigal which undercuts its argument that there may have been a good faith dispute regarding whether wages were owing. More importantly, CVT attempts to shift the burden to Madrigal to prove that he acted in good faith; section 218.5 requires the employer to demonstrate that the employee filed the claims in bad faith. In short, the trial court could reasonably have concluded Madrigal's claims were not filed in bad faith under any of the measures discussed above. (*Ramos v. Garcia*, *supra*, 248 Cal.App.4th at p. 792 ["some legitimacy"]; *Arave v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, *supra*, 19 Cal.App.5th at p. 548 [not frivolous]; *Williams*, *supra*, 61 Cal.4th at pp. 111, 115 [not "objectively without foundation when brought"]; *Leek v. Cooper*, *supra*, 194 Cal.App.4th

16.

at p. 421 [more than "absolutely no evidence to support" the claims].) We find no abuse of discretion.

### D. Code of Civil Procedure Section 1032 Does Not Apply Where the Fee and Cost Provisions of Section 218.5 Apply

CVT contends that even if Madrigal did not act in bad faith in filing the action, it was the prevailing party as to Madrigal and therefore it was entitled to recover costs pursuant to Code of Civil Procedure section 1032, subdivision (b). We disagree.

"Code of Civil Procedure section 1032 does not apply where the fee and cost provisions of section[] … 218.5 apply." (*Cruz v. Fusion Buffet, Inc.* (2020) 57 Cal.App.5th 221, 241; accord *Chavez v. California Collision, LLC* (2024) 107 Cal.App.5th 298, 310 ["the specific one-way cost and fee shifting provision[] in … section[] … 218.5 (absent a finding of bad faith) take[s] precedence over the more general one[] in [Code of Civil Procedure] section[] … 1032"].) We agree with the *Chavez* court's conclusion that the "legislative intent [behind section 218.5] would not be served by permitting a court to award costs to a prevailing employer" without a showing of the employee's bad faith in bringing the action. (*Chavez, supra,* at p. 311.)

CVT rightly acknowledges that section 218.5 applies. Code of Civil Procedure section 1032 therefore does not apply. Because the trial court acted within its discretion to conclude Madrigal did not act in bad faith, denial of costs was not error.

## II. CVT'S COSTS AS TO PAIM

CVT argues the trial court's conclusion that CVT could not recover costs from Paim was error for three reasons: first, it erred in concluding that CVT's request for costs was untimely because the request was filed more than 15 days after the trial court granted CVT's demurrer without leave to amend as to Paim's cross-complaint; second, it erred in concluding CVT was not a prevailing party as to Paim under the "net monetary recovery" theory; and third, it erred in raising both issues *sua sponte* rather than treating them as forfeited.

17.

Paim disagrees on all accounts. We agree with CVT that the request for costs regarding dismissal of Paim's cross-complaint was not untimely. As to CVT's monetary recovery against Paim, we conclude CVT was not a prevailing party with a net monetary recovery and the trial court committed no error by identifying the issue, permitting the parties to submit briefing on the issue, and deciding the issue in Paim's favor.

*A. Additional Background*

In the Cortez litigation, CVT and Paim filed cross-complaints against each other.[9] The trial court sustained CVT's demurrer as to Paim's cross-complaint without leave to amend and provided notice of the ruling on September 12, 2022. The court's order on the demurrer did not resolve all issues between CVT and Paim.

After the jury verdict in the Cortez litigation, the trial court entered judgment in favor of Cortez in the total amount of $25,282.48, inclusive of stipulated interest and liquidated damages. The jury found "Paim cause[d] CVT to violate the Labor Code in the employment of Cortez" and further that Paim was responsible for 36.75% of the damages for the nonpayment of overtime (i.e., it found he was responsible for $551.25 in damages) and not responsible for any of the other violations. On November 22, 2023, CVT filed a memorandum of costs seeking recovery of $25,054.60 against Paim.

On February 26, 2024, the trial court held the memorandum of costs was untimely "as to [its] costs incurred [i]n defending [Paim's] cross-complaint" because the memorandum was filed more than 15 days after the court gave "notice of the ruling," sustaining CVT's demurrer. As to the remaining portion of CVT's memorandum, the court determined CVT was not a prevailing party as to Paim because Paim's

---

**9** The record before us does not contain Cortez's complaint, CVT's cross-complaint, or Paim's cross-complaint. CVT characterizes its crossclaim against Paim as an indemnity claim (which is supported by the title of the special verdict form and the judgment) and Paim's crossclaim against CVT as for indemnity under section 2802 and for declaratory relief.

18.

responsibility to CVT—$551.25—would all go toward satisfying the judgment in favor of Cortez and CVT therefore "did not receive a 'net monetary recovery.' "

   B. *CVT's Memorandum of Costs Was Not Untimely with Respect to the Sustained Demurrer to Paim's Cross-Complaint*

California Rules of Court, rule 3.1700,[10] states in relevant part: "A prevailing party who claims costs must serve and file a memorandum of costs within 15 days after the date of service of the notice of entry of judgment or dismissal by the clerk under Code of Civil Procedure section 664.5 … or within 180 days after entry of judgment, whichever is first." (Rule 3.1700(a)(1).) In turn, Code of Civil Procedure section 664.5, requires a party subdivision (c) defines a "judgment" as including "any judgment, decree, or signed order from which an appeal lies."

A sustained demurrer is not, by itself, a dismissal of a complaint. (Code. Civ. Proc, § 581, subd. (f)(1) ["[t]he court may dismiss the complaint as to that defendant … [¶] … after a demurrer to the complaint is sustained with leave to amend and either party moves for dismissal"]). Nor can a demurrer sustained on a cross-complaint resolving some, but not all, claims between two defendants otherwise result in a judgment because it does not result in a "final determination of the rights of the parties in an action or proceeding" (*id.*, § 577) or "determine the ultimate rights of the parties on each side [of the litigation], as between themselves" (*id.*, § 578). (*Cf. Sanabria v. Embrey* (2001) 92 Cal.App.4th 422, 425–426 [if a plaintiff voluntarily dismisses a complaint against one of several defendants and gives notice of the dismissal; when notice of entry of dismissal is served, the 15-day period for the dismissed defendant to file a memorandum of costs begins to run].)

The record before us does not reflect whether any party requested dismissal of Paim's cross-complaint against CVT. However, CVT and Paim agree that no such request was made, and we accept their representations. Even if CVT had requested

---

**10** All further undesignated rules references are to the California Rules of Court.

19.

dismissal of the complaint, the dismissal would not have resolved all issues between the CVT and Paim. Because CVT's sustained demurrer did not result in a dismissal or judgment within the meaning of rule 3.1700 or Code of Civil Procedure section 664.5, the September 12, 2022 notice of ruling date did not trigger the 15-day period within which CVT was required to file a memorandum of costs. The trial court's conclusion to the contrary was error.

### C. CVT Did Not Obtain a Net Monetary Recovery

CVT contends it was a prevailing party as to Paim because it's demurrer to Paim's cross-complaint was sustained in full and it "obtained money from Paim and … Paim obtained no money from CVT." CVT argues that the trial court should have found that it obtained a "net monetary recovery" as to Paim without respect to CVT's obligations to Cortez as a result of the jury's verdict. In other words, CVT argues, "who 'prevailed' is determined complaint-by-complaint"; "[t]here is no overall netting out across the entire action." Paim disagrees, arguing that the net monetary recovery determination must be made in consideration of the outcome of the entire action. We agree with Paim.

Section 1032, subdivision (a)(4) of the Code of Civil Procedure provides that a " 'Prevailing Party' includes the party with a net monetary recovery, a defendant in whose favor a dismissal is entered, a defendant where neither plaintiff nor defendant obtains any relief, and a defendant as against those plaintiffs who do not recover any relief against that defendant."[11]

The only claim between CVT and Paim that the jury decided in CVT's favor was a derivative claim for equitable indemnity: that "Paim cause[d] CVT to violate the Labor Code" and was 36.75% responsible for CVT's nonpayment of overtime compensation to

---

[11] In 1986, section 1032 was modified to include a revised definition of a "prevailing party." (Stats. 1986, ch. 377, §§ 5 & 6, p. 1578.) The former version of section 1032 provided for a costs award to the plaintiff or defendant "upon a judgment in his favor." (Former § 1032, subds. (a)-(c), as amended by Stats. 1957, ch. 1172, p. 2464.)

Cortez. Paim argues, as the trial court concluded in its ruling, CVT did not obtain a monetary recovery for itself, it obtained an offset against the judgment in favor of Cortez. Paim encourages us to adopt the trial court's reasoning which relies on *Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1334 (*Goodman*), for the proposition that " ' "the party with a net monetary recovery" is the party who gains money that is "free from … *all* deductions." ' " In *Goodman*, home purchasers brought an action against a construction partnership, its construction and financing partners, architect, and brokers. (*Id.* at p. 1331.) Prior to trial, the purchasers settled with all defendants except the financing partners. (*Ibid.*) The verdict obtained was less than the total settlement amounts from the settling defendants and our Supreme Court concluded that the purchasers were therefore not prevailing parties because the offsets (the money already paid by the settling defendants)[12] reduced the amount the purchasers would recover from the financing partners under the verdict to zero; in other words, purchasers were left with no net monetary recovery because they took nothing in the suit despite the monetary award. (*Id.* at pp. 1331, 1334–1336, 1338.)

CVT contends that *Goodman* is inapplicable because it "involved offsets between settling and non-settling defendants in the same action—not aggregating recoveries across different claims between different parties." We disagree and see no meaningful difference between the offsets in *Goodman* and the indemnity judgment in this case. In *Goodman*, the plaintiff's monetary award from the finance partners was nominally $146,000, but prior settlements with *other defendants* totaled over $230,000. (*Goodman*, *supra*, 47 Cal.4th at p. 1331.) The court determined the finance partners must receive credit for those settlements pursuant to Code of Civil Procedure section 877, and the

---

[12] The offsets were statutorily required under Code of Civil Procedure section 877, subdivision (a), which provides in relevant part that a good faith settlement by one joint tortfeasor or co-obligor "shall reduce the claims against the others in the amount stipulated by the release …."

offset resulted in plaintiffs taking nothing in the action, thus obtaining no net monetary recovery. (*Goodman, supra,* at pp. 1330, 1338.) In this case, CVT's monetary recovery from Paim ($551.25) on its derivative equitable indemnity claim regarding Paim's responsibility in CVT's failure to pay overtime was reduced to zero by Cortez's monetary recovery ($1,500 for CVT's failure to pay overtime and $25,282.48 overall) against CVT. CVT therefore had no net monetary recovery in this action that was free from deductions; it gained nothing; the amount Paim was required to pay merely offset a portion of CVT's monetary judgment to Cortez. CVT was not a prevailing party as a party with a net monetary recovery.

Our conclusion is supported by the character of equitable indemnity actions. In *Miller v. American Honda Motor Co.* (1986) 184 Cal.App.3d 1014 the appellate court considered whether costs were due under Code of Civil Procedure former section 1032 which provided in relevant part that an award of costs as a matter of right was due "to a successful plaintiff … [in] 'an action for the recovery of money or damages.' " (*Miller, supra,* at p. 1018.) The court explained "a cross-complaint for comparative equitable indemnity is not an action for the recovery of money or damages within the meaning of the statute. It is instead a proceeding in equity by a tort defendant seeking an 'equitable distribution of loss among multiple tortfeasors.' " (*Id.* at p. 1019.) Because the former statute committed equitable actions to the discretion of the trial court, an award of costs was not mandatory. (*Id.* at pp. 1019–1020.) While the amendments to Code of Civil Procedure section 1032 have eliminated the distinction between legal and equitable claims as it relates to whether costs are mandatory or awarded at the discretion of the trial court, the court's summary is illuminating as to the nature of a monetary recovery under a claim for equitable indemnity. Although relief obtained under such a claim "may take the form of a payment of money," the nature of the claim has "historically been 'based on equitable considerations of unjust enrichment and restitution' " designed to provide an " 'equitable distribution of loss among multiple tortfeasors.' " (*Ibid.*) Any money

22.

obtained through a partial equitable indemnity cross-complaint is necessarily an offset against a greater award to the plaintiff. Such a situation does not result in a *net* monetary recovery to the indemnitee.

CVT's reliance on *Great Western Bank v. Converse Consultants, Inc.* (1997) 58 Cal.App.4th 609 for the proposition that courts must apply a complaint-by-complaint methodology to determining net monetary recovery is misplaced. In *Great Western Bank* the plaintiffs sued Great Western Bank and others (Great Western) and, in turn, Great Western filed a cross-complaint against Converse Consultants, Inc. and others (Converse) for indemnity. (*Id*. at p. 611.) Converse settled directly with the plaintiffs. (*Id.* at p. 612.) The trial court determined the settlement was in good faith and dismissed Great Western's cross-complaint. (*Ibid.*) Converse sought and obtained costs as a prevailing party because it was a defendant in whose favor a dismissal was entered. (*Ibid*.) The appellate court affirmed on the same basis. (*Id*. at p. 614.) The appellate court noted that Great Western obtained the benefit of an offset against the plaintiffs' judgment against it based on Converse's settlement with the plaintiffs despite Converse having paid no money to Great Western, but nevertheless held that Great Western had not obtained a net monetary recovery. (*Id*. at p. 615.) CVT suggests that if Great Western had received a monetary recovery from Converse that it would have obtained a net monetary recovery. *Great Western Bank* does not stand for the proposition that a defendant's monetary recovery against a third-party defendant on a cross-complaint constitutes a net monetary recovery. (See *id*. at p. 615.) Even if some implication could be read in for that proposition, it would amount to dicta, at best. (See *Goodman*, *supra*, 47 Cal.4th at pp. 1330, 1388.) CVT also fails to note that our Supreme Court in *Goodman* rejected the *Great Western Bank* court's conclusion that a settlement offset had no effect on whether a party obtained a net monetary recovery for purposes of deciding prevailing party, casting further doubt on its reasoning on the issue. (*Id.* at p. 1338.)

23.

In short, we conclude CVT was not a prevailing party as a party with a net monetary recovery; the trial court did not err.

### D. Paim Did Not Forfeit The Prevailing Party Status Issue Nor Did The Trial Court Err In Addressing It

CVT contends that the trial court erred by raising *sua sponte* timeliness of CVT's memorandum of costs[13] and CVT's prevailing party status. It also contends that Paim forfeited the issues of timeliness and prevailing party status by failing to raise them below.[14]

For the proposition that the trial court violated the "party presentation principle" by taking over Paim's case, CVT relies on *United States v. Sineneng-Smith* (2020) 590 U.S. 371. That reliance is misplaced. In *Sineneng-Smith*, after the circuit court received written and oral argument, it "named three *amici* and invited them to brief issues framed by the panel, including a question [the defendant]" never raised. (*Id*. at pp. 374–375.) The circuit court "departed so drastically from the principle of party presentation as to constitute an abuse of discretion." (*Id.* at p. 375.) Such was not the case below.

The trial court, in determining the issue placed before it by the parties—whether CVT was entitled to an award of costs against Paim under Code of Civil Procedure section 1032—was required to determine whether CVT was a prevailing party such that it was entitled to a mandatory award of costs. (See Code Civ. Proc., § 1032, subds. (a)–

---

**13** Because we concluded that the trial court erred in using the date it sustained CVT's demurrer to Paim's cross-complaint as the measuring date for timeliness of CVT's memorandum of costs, we do not address whether the trial court erred in raising the issue *sua sponte* or whether Paim forfeited the issue.

**14** CVT contends Paim "waived" the claim by failing to object. " '[T]he correct term is "forfeiture" rather than "waiver," because the former term refers to a failure to object or to invoke a right, whereas the latter term conveys an express relinquishment of a right or privilege. [Citations.] As a practical matter, the two terms on occasion have been used interchangeably.' " (*PGA West Residential Assn., Inc. v. Hulven Internat., Inc*. (2017) 14 Cal.App.5th 156, 175, fn. 13, quoting *In re Sheena K*. (2007) 40 Cal.4th 875, 880, fn. 1.)

24.

(b).) As the trial court correctly noted, neither party briefed the issue in any detail; Paim's briefing did not mention Code of Civil Procedure section 1032 at all and CVT argued only that it was "statutorily entitled to its costs as the prevailing party" citing to that statute. The court "ask[ing] counsel to brief … th[e] issue o[f] who was the prevailing party" was appropriate. That Paim's trial counsel failed to brief the correct issue after the court's request did not limit appropriate scope of the court's analysis. The parties framed the issue, and the court was required to determine whether CVT was the prevailing party to resolve the issue; the court did not cause the kind of "radical transformation" of the case that would violate the principle of party presentation. (*United States v. Sineseng-Smith*, *supra*, 590 U.S. at p. 372.)

As to Paim's purported forfeiture regarding CVT's prevailing party status, an issue is forfeited when a party fails to raise it below *and* it is not actually considered below. (See *People v. Simon* (2001) 25 Cal.4th 1082, 1103; *People v. Gibson* (1994) 27 Cal.App.4th 1466 [a principal purpose of forfeiture doctrine is to encourage presentation of issues to the trial court, so the trial court may avoid potential errors and thereby conserve judicial resources that might otherwise be spent responding to errors only after the fact].) Despite Paim's failure to address the issue below when explicitly asked to do so, the trial court considered and decided the issue. Because the issue in question was addressed below, we find no forfeiture.

III. THE TRIAL COURT ERRED IN AWARDING PLAINTIFFS' ATTORNEY FEES AND COSTS AS TO PAIM

CVT argues that the trial court erred in apportioning fees and costs between CVT and Paim rather than awarding fees and costs jointly and severally between CVT and Paim. Alternatively, if apportionment was appropriate, CVT argues the trial court abused its discretion in apportioning only 2.2% of the plaintiffs' fees and costs to him. It further argues that the court also erred in apportioning costs *sua sponte*, in absence of any request by Paim.

25.

We ordered the parties to submit supplemental briefing on "whether Cortez and Silva were statutorily authorized to recover attorney's fees and costs from Paim, whom neither Cortez nor Silva sued or obtained a judgment against." CVT contends that Paim forfeited the issue and, in any event, "a cross-defendant found liable for equitable indemnity may properly be assigned responsibility for attorney's fees and costs awarded against the party seeking indemnity." Cortez, Silva, and Paim agree that CVT should be solely responsible for the fee award because neither Cortez nor Silva ever "sued, maintained an action against, [or] obtained a judgment against" Paim and no statutory authority permits recovery of attorney fees or costs in that circumstance. We agree with Cortez, Silva, and Paim.

As a threshold matter, CVT contends that Paim forfeited[15] any argument that Cortez and Silva were not entitled to attorney fees against it by failing to object below or brief the issue in its respondent's brief. In general, arguments not made or not fully developed in the petition are forfeited. (See *Magana v. Superior Court* (2018) 22 Cal.App.5th 840, 854, fn. 2; *County of Los Angeles v. Superior Court* (2013) 222 Cal.App.4th 434, 452, fn. 14.) However, "the forfeiture doctrine is not absolute." (*K.R. v. Superior Court* (2022) 80 Cal.App.5th 133, 142.) "[A]n appellate court may review a forfeited claim—and '[w]hether or not it should do so is entrusted to its discretion.' " (*In re Sheena K.*, *supra,* 40 Cal.4th at p. 887, fn. 7; see *County of Los Angeles v. Superior Court* (2021) 65 Cal.App.5th 621, 636.) In this case, CVT asks us to decide that the apportionment of attorney fees and costs was error, but objects to consideration of whether the underlying award of fees and costs against Paim was error. Because whether the award of fees and costs against Paim was error is a pure issue of law, and because ruling on CVT's challenge to apportionment would tacitly approve the award of fees and

---

**15** Again, CVT uses the term "waived" rather than "forfeited." However, we understand its intended meaning.

26.

costs (regardless of how we might decide the issue), we decline to enforce any forfeiture and we consider the issue on its merits.

Attorney fees are not recoverable against a party except as "specifically provided for by statute" or as agreed upon by the parties. (Code Civ. Proc. § 1021; see *Carlsbad Police Officers Assn. v. City of Carlsbad* (2020) 49 Cal.App.5th 135, 151.) Likewise, "the right to costs is governed strictly by statute …." (*Naser v. Lakeridge Athletic Club* (2014) 227 Cal.App.4th 571, 576; accord *Rozanova v. Uribe* (2021) 68 Cal.App.5th 392, 399.)

In this case, the trial court appears to have awarded attorney fees and costs to Cortez and Silva pursuant to sections 218.5, subdivision (a), 1194 subdivision (a), and 226, subdivision (e). Collectively, those sections require an award of "costs" and "reasonable attorney's fees" to an employee who prevails on claims of nonpayment of wages (§ 218.5, subd. (a)),[16] failure to pay minimum wage or overtime compensation (§ 1194, subd. (a)), or wage statement violations (§ 226, subd. (e)(1)). Neither Cortez nor Silva sued Paim. As a necessary consequence, neither Cortez nor Silva prevailed against Paim on a claim for nonpayment of wages, failure to pay minimum wage, or wage statement violations. On the face of the statutes under which the trial court awarded fees and costs, Cortez and Silva were not authorized to recover fees from Paim. The parties have identified no case where a plaintiff was awarded fees against a third-party defendant it did not sue. This court's own research has also revealed no such case.

Despite the absence of statutory authority for an award of attorney fees and costs against Paim, CVT nevertheless contends that "[u]nder California law, a cross-defendant

---

**16** Section 218.5 "does not apply to any action for which attorney's fees are recoverable under section 1194." (§ 218.5, subd. (b).) Section 1194 provides a one-way fee shifting provision permitting only employees who prevail to recover attorney fees rather than the two-way fee shifting provision of section 218.5. Because we are addressing a situation where the employees prevailed, the distinction does not matter in this case.

found liable for equitable indemnity may properly be assigned responsibility for attorney's fees and costs awarded against the party seeking indemnity. This conclusion follows from the nature of indemnity itself and California's framework governing fee awards." CVT relies on *American Motorcycle Assn. v. Superior Court* (1978) 20 Cal.3d 578, 590, 595, 597, for the propositions that equitable indemnity is to be "flexibly applied to achieve fairness" and that our Supreme Court's use of the term "responsibility" rather than "damages" in discussing the shift from the former rule of all-or-nothing equitable indemnity to comparative fault suggests that attorney fees should also be shifted to a third-party defendant when a third-party plaintiff prevails on an equitable indemnity claim. As to the former proposition, flexibility in achieving fairness was largely the basis for the *American Motorcycle* court's support of departure from an all-or-nothing theory of equitable indemnity in favor of " '*a system under which liability for damage will be borne by those who[] … caused it in direct proportion to their relative fault.*' " (*See American Motorcycle*, *supra,* at pp. 593–598.) However, as to both propositions, the *American Motorcycle* court did not consider the question at issue in this case—whether a successful third-party indemnity claim should result in redistribution of attorney fees and costs. " ' "[C]ases are not authority for propositions not considered." ' " (*B.B. v. County of Los Angeles* (2020) 10 Cal.5th 1, 11; accord *People v. Brooks* (2017) 3 Cal.5th 1, 110 ["It is axiomatic that a case is not authority for an issue that was not considered."].)

CVT cites two additional cases it contends support allocation of a portion of the responsibility for attorney fees to Paim because of "Paim's substantial role in the Labor Code Violations …." The cases cited stand for the proposition that allocation of attorney fees among non-prevailing parties may be appropriate when fees are either statutorily (*Californians for Responsible Toxics Management v. Kiser* (1989) 211 Cal.App.3d 961, 966, 976) or contractually (*Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 97) authorized. However, neither case stands for the proposition that a

28.

plaintiff can recover attorney fees from a third-party defendant it did not sue and did not obtain a judgment against.

In short, no statutory authority supports an award of attorney fees and costs in favor of Cortez and Silva against Paim. The trial court's award of such attorney fees and costs was error.

## DISPOSITION

The trial court's December 22, 2023, award of costs and attorney fees to Cortez and Silva against Paim, and February 5, 2024, partial ruling that CVT's memorandum of costs was untimely as to its costs incurred in defending Paim's cross-complaint are reversed. In all other respects, the judgment is affirmed. The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(3).)


                                                                        FRANSON, J.

WE CONCUR:


LEVY, Acting P. J.


DETJEN, J.

29.